[Civ. No. 38787. First Dist., Div. One. Mar. 7, 1977.]

DRY CREEK VALLEY ASSOCIATION, INC.,
Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF SONOMA COUNTY,
Defendant and Respondent;
HEALDSBURG SAND AND GRAVEL COMPANY et al.,
Real Parties in Interest and Appellants.

## Counsel

Geary, Geary, Shea, Pawson & O'Donnell and Michael F. O'Donnell for Real Parties in Interest and Appellants.

No appearance for Defendant and Respondent.

Richard R. Day for Plaintiff and Respondent.

## Opinion

**ELKINGTON, J.**—Government Code section 25003 provides that: "[A county board of supervisors] may make and enforce rules and regulations necessary for the government of the board, the preservation of order, and the transaction of business."

The Board of Supervisors of Sonoma County, a nonchartered county organized and operating under the general laws of the state (see Cal. Const., art. XI, § 1), was constituted of five members. It made the following rule relating to its voting procedures:

"RULE 12. In the event that one less than the necessary number of 'aye' votes has been cast, then an 'abstain' vote shall constitute concurrence and the Clerk shall set forth in his minutes that the matter was passed pursuant to this rule."

Healdsburg Sand and Gravel Company and Soiland, Inc. had appealed to the county's board of supervisors (hereafter board) from a decision of the county's board of zoning adjustments. On a motion to overrule the board of zoning adjustments, only four supervisors were present. Two supervisors voted in favor of the motion, one voted against it and one abstained from voting. In accordance with its rule 12, the board's chairman ruled that the abstention would be deemed a vote in favor of the motion, and that the motion had passed by vote of a majority of the members of the board.

Dry Creek Valley Association, Inc. thereafter sought to overturn the board's decision in the matter by an action for declaratory relief. It

sought thereby a judicial declaration that "the vote taken by the Board of Supervisors [*had not*] constituted a majority vote in accordance with the requirements of Section 25005 of the California Government Code."

Government Code section 25005 provides:

"A majority of the members of the board constitute a quorum for the transaction of business. No act of the board shall be valid or binding unless a majority of all the members concur therein."

The superior court entered judgment declaring as follows:

"1. That Rule 12 of the Rules of the Board of Supervisors of the County of Sonoma is declared by the Court to be, and is invalid.

"2. The vote of the Board of Supervisors on the appeal of Healdsburg Sand and Gravel and Soiland, Inc. from the determination of the Board of Zoning Adjustments . . . did not constitute a majority vote upholding the appeal."

Healdsburg Sand and Gravel Company and Soiland, Inc. (hereafter appellants) have appealed from the judgment.

The only issue is the legality of the board's rule 12. We are concerned first with its reasonableness and secondly whether it is in conformance with sections 25003 and 25005. (See *Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 174-176 [70 Cal.Rptr. 407, 444 P.2d 79]; *Stribling* v. *Mailliard* (1970) 6 Cal.App.3d 470, 474 [85 Cal.Rptr. 924].) On each of these issues there is a "strong presumption of regularity" of the rule. (*Ralphs Grocery Co.* v. *Reimel, supra,* p. 175.)

Helpful in our determination of rule 12's reasonableness are judicial comments of this state and elsewhere, some of which we now consider.

*Martin* v. *Ballinger* (1938) 25 Cal.App.2d 435 [77 P.2d 888] antedated the enactment of section 25005 and of course did not consider that statute's language that—"No act of the board shall be valid or binding unless a majority of all the members concur therein." But it nevertheless determined, without expressing disagreement, that "the courts of other jurisdictions have [generally] steadfastly adhered to the doctrine that when members of a board, present at a meeting, desire to defeat a measure, they must vote against it; that inaction on their part will not

accomplish their purpose, and that their refusal to vote is, in effect, a declaration that they consent that the majority of the quorum may act for the body of which they are members." (P. 439.)

This rationale appears to have a common law genesis in *Rex* v. *Foxcroft* (1760) 2 Burr. 1017 [97 Eng.Rep. 683]. There, in a common council election for town clerk, 21 of the council's 25 members were present. Only 9 of those present voted for one Seagrave, and 12 did not vote at all. Concluding, in effect, that the 12 nonvoting members had acquiesced in the vote of the 9, Seagrave's election was confirmed by the court.

Civil Code section 22.2 thus becomes relevant to our discussion. It provides: "The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this state, is the rule of decision in all the courts of this state."

The great bulk of authority on the subject is in agreement with *Rex* v. *Foxcroft, supra.* We quote briefly from some of it.

4 McQuillin on Municipal Corporations (rev. ed. 1968) section 13.32, page 521, states that: "While it has been said that those present who refuse to vote for a proposition cannot be counted, the general rule is [that they] are regarded as having voted affirmatively, i.e., for the proposition, or to have voted with the majority." (Fns. omitted.) Other holdings to the same effect: "We . . . conclude that the rule known as the common-law rule is a proper and efficient rule to adopt, in order that municipal business shall be conducted with a proper regard to the wishes of its citizens. This common-law rule may be stated to be that the legal effect of refusing to vote is an acquiescence in the action taken by the majority of those who do vote." (*Babyak* v. *Alten* (1958) 106 Ohio App. 191 [154 N.E.2d 14, 19]); "We are inclined to the opinion that the proper rule is that those who remain silent shall be deemed to assent to the act of those who do vote." (*State* ex rel. *Young* v. *Yates* (1897) 19 Mont. 239 [47 P. 1004, 1006]); "The rule is that when a quorum of a governing body is present those members who are present and do not vote will be considered as acquiescing with the majority." (*Pierson-Trapp Company* v. *Knippenberg* (Ky.App. 1965) 387 S.W.2d 587, 588; *Payne* v. *Petrie* (Ky.App. 1967) 419 S.W.2d 761, 763); "We are persuaded that the trial court erred in holding that the ordinance was not passed. We adopt the rule that a passed vote is to be considered as a vote with the majority, a

quorum being present." (*Northwestern Bell T. Co.* v. *Board of Com'rs of Fargo* (1973) 211 N.W.2d 399, 404 [63 A.L.R.3d 1064]).

We have read and considered the cases of *State* v. *Gruber* (1962) 231 Ore. 494 [373 P.2d 657] and *Ezell* v. *City of Pascagoula* (1970) 240 So.2d 700, principally relied upon by respondent Dry Creek Valley Association. The courts of these cases had chosen to adopt a different and minority rule as the law of their respective states. They were not passing upon the reasonableness of a rule enacted by a local legislative body, as are we. And it is notable that the *State* v. *Gruber* court, despite a contrary conclusion based upon its state's statutory language, found (p. 658) that "The correct rule stems from the decision of Lord Mansfield in the frequently cited case of Rex v. Foxcroft," the case to which we have adverted as establishing the common law rule.

The majority rationale also comports with the public policy that members of public legislative bodies take a position, and vote, on issues brought before them. This policy has been expressed as "the duty of members of a city council to vote and that they ought not 'by inaction, prevent action by the board.' " (*State* v. *Gruber, supra,* 373 P.2d at p. 660.) Or as elsewhere stated: "The duty to vote is present if the member is present." (*Northwestern Bell T. Co.* v. *Board of Com'rs of Fargo, supra,* 211 N.W.2d 399, 403.)

From the above considerations we conclude that the rationale and purpose of rule 12 are reasonable. We therefore proceed to a determination whether the rule is contrary to Government Code section 25005, as contended by respondent Dry Creek Valley Association.

■ We first observe that section 25005 will be presumed *not* to be out of harmony with the common law principle at issue, unless it is found to *expressly so provide. (Saala* v. *McFarland* (1965) 63 Cal.2d 124, 130 [45 Cal.Rptr. 144, 403 P.2d 400].) The statute does not expressly so provide. It follows that the common law and the statute must be construed so as to avoid conflict, if reasonably possible. We are of the opinion that this may be done.

■ As noted, Government Code section 25005 states: "A majority of the members of the board constitute a quorum for the transaction of

business. No act of the board shall be valid or binding ·unless a majority of all the members concur therein."

This statute makes clear that while a majority of the board will constitute a quorum for the transaction of business, no act of the board is valid unless a majority of the board, and not a majority of those present and constituting a quorum, shall concur. But it does not indicate how the members present shall express their concurrence.

Under the authority of Government Code section 25003, the board has made its rule 12, providing that where the necessary "aye" votes are one short of a majority of the entire board, an "abstain" vote shall constitute concurrence with the "aye" votes. Each member of the board is thus informed by the rule that he may *concur* in such a situation by either an "aye" vote or an "abstain" vote. Or if he shall so choose, he may vote against the measure by a "no" vote. In any of these events the requirement of section 25005, that a majority of all members of the board shall concur for passage of a measure, is satisfied.

And it may reasonably be said that rule 12 does no more than assure that all of the board members who are present vote, by whichever manner they shall choose, in accordance with their convictions and with the public policy we have noticed.

The foregoing rationale is also consistent with the common law rule that a board member's abstention "is, in effect, a declaration that [he consents]" (*Martin* v. *Ballinger, supra,* 25 Cal.App.2d 435, 439), or is to be "regarded as having voted affirmatively." (4 McQuillin, *op.cit.,* § 13.32, p. 521), or that he "shall be deemed to assent to the act of those who do vote" (*State* ex rel. *Young* v. *Yates, supra,* 47 P. 1004, 1006).

We accordingly also conclude that the board's rule 12 is not contrary to Government Code section 25005.

We have considered the trial court's suggestion that rule 12's effect would be an "aye" vote on a measure in which an abstaining supervisor might have some pecuniary interest, and thus would be contrary to public policy. But it appears that without rule 12 such a possible evil would nevertheless persist; an abstention then would be the equivalent

of a "no" vote on a matter whose passage might be contrary to the supervisor's pecuniary interest.[1]

We are of the opinion that rule 12 does not permit an abstaining board member, while appearing to be impartial, to in effect cast his vote for a measure thus to deceive the interested public generally. The rule is a matter of public record and notice, and the true effect of a member's abstention will undoubtedly be widely known. Nor does rule 12 in any way restrict a member in his voting; he is only required *to vote,* if present. He may, as indicated, approve a measure by an "aye" or an "abstain" vote, and in his freedom to vote as he chooses he is untrammeled.

For these several reasons the judgment of the superior court will be reversed.

Our decision does no more than hold that the board's rule 12 is reasonable, properly made under the authority of Government Code section 25003, and not inconsistent with Government Code section 25005. We have made no determination whether or not the common law rule of *Rex* v. *Foxcroft, supra,* 2 Burr. 1017 [97 Eng.Rep. 683], is *otherwise* the law of the state, for that question has not been presented to us.

The judgment is reversed.

Sims, Acting P. J., and Lazarus, J.,* concurred.

The petition of the plaintiff and respondent for a hearing by the Supreme Court was denied May 5, 1977.

---

[1]No conflict of interest has been suggested here, and the legal effect of such a conflict has not been briefed, or otherwise considered by the parties or by us. It may be that an abstention because of a conflict of interest would reasonably call for a different rule than that which we apply, but a resolution of that question must await a case where the point is at issue and properly presented to the court. The board, however, might wish to consider modifying its rule in accordance with the comment of the trial court: "If a conflict of interest exists, the supervisor should declare this fact. He then should be disqualified from voting and his abstention from voting for this reason should not affect the outcome of the issue."

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.